IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HYUNDAI TRANSLEAD, INC. | ) | |
| *Ex rel.* the Estate of Trailer Source, Inc., | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:04-cv-0582** |
| | ) | **Judge Trauger** |
| **JACKSON TRUCK & TRAILER** | ) | |
| **REPAIR INC.,** *et al.*, | ) | |
| | ) | |
|     **Defendants/Counter-Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HYUNDAI TRANSLEAD, INC.,** | ) | |
| | ) | |
|     **Counter-Defendant.** | ) | |

## MEMORANDUM

Pending before the court is the Motion to Dismiss filed by defendants Jackson Truck &

Trailer Repair, Inc., James A. Harrell, Raleigh J. Williams, and Mark Lazarus (Docket No. 89),

the plaintiff's response (Docket No. 103), and the defendants' reply (Docket No. 105). For the

reasons discussed below, the defendants' motion will be granted in part and denied in part.

## BACKGROUND

The defendants' Motion to Dismiss is preceded by seven years of procedural history in a

dispute that has spanned four courts.[1] From 2000 to 2002, plaintiff Hyundai Translead, Inc.

---

[1] Unless otherwise noted, factual allegations are taken from the Second Amended
Complaint (Docket No. 85). The procedural history is drawn from the plaintiff's and the
defendants' briefs, as well as from this court's opinion in *Hyundai Translead, Inc. v. Jackson*

1

("Hyundai"), a manufacturer of semi-truck trailers, sold trailers to Southern Trailer and Equipment Sales, Inc. ("Southern Trailer"), a dealership in which defendants Harrell and Williams owned a controlling interest. Harrell and Williams also owned controlling interests in two other trailer dealerships, Jackson Truck & Trailer Repair, Inc. ("JT&T") and Trailer Source, Inc. ("Trailer Source"). Defendant Lazarus was the chief financial officer for the latter two corporations.

## I.     Procedural History

In 2002, Hyundai filed suit in the Superior Court of San Diego County, California against the three dealerships, Harrell, Williams, and Lazarus, alleging that Hyundai had delivered more than $44 million in trailers to Southern Trailer but had received only $26 million in payment. Hyundai alleged that Southern Trailer had fraudulently conveyed trailers, which otherwise could have been used to settle its debt to Hyundai, to the other dealerships. In August 2002, Hyundai settled with all the defendants in the California action; Southern Trailer and Trailer Source agreed to pay $21 million to Hyundai in installments. In October 2003, Trailer Source defaulted on the settlement agreement. (Compl., Docket No. 1, ¶¶ 9-10.)

The instant suit began on June 30, 2004, when Hyundai filed a complaint against JT&T, Harrell, Williams, Lazarus, and Jeffrey G. Davis.[2] As detailed below, Hyundai alleged that the defendants fraudulently transferred Trailer Source's assets to avoid paying the company's debt. Hyundai asserted claims for fraudulent transfer, conversion, fraudulent misrepresentation,

_Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)_, No. 3:06-0573, 2007 U.S. Dist. LEXIS 23816 (M.D. Tenn. Mar. 30, 2007).

[2] Davis, who was a shareholder of JT&T, is no longer a party to this action.

2

negligent misrepresentation, and successor liability. (*Id.* ¶¶ 24-60.) Hyundai then amended its complaint to add claims for rescission and reformation of the California settlement agreement. (Am. Compl., Docket No. 17, ¶¶ 61-66.)

On January 6, 2005, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source, and on February 14, 2005, the bankruptcy court entered an order of relief. Hyundai filed a Notice of Automatic Stay in this court (Docket No. 45), and the dispute moved to bankruptcy court under the caption *In re Trailer Source, Inc.*, No. 3:05-bk-00148 (Bankr. M.D. Tenn.).

On February 18, 2005, the bankruptcy court appointed Samuel K. Crocker as trustee in the Trailer Source bankruptcy. Hyundai contacted Crocker to request that he investigate the fraudulent transfer claims. Crocker eventually decided against it, citing a lack of funds to pay the investigation and litigation costs. Hyundai moved for a grant of derivative standing to pursue the fraudulent transfer claims itself on behalf of the bankruptcy estate; the bankruptcy court denied the motion on February 21, 2006. Subsequently, Crocker settled all potential fraudulent transfer claims with JT&T for $50,000, and the bankruptcy court approved the settlement on March 28, 2006. Hyundai appealed, and on March 30, 2007, this court reversed the bankruptcy court, granting derivative standing to Hyundai and denying approval of Crocker's settlement. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, No. 3:06-0573, 2007 U.S. Dist. LEXIS 23816 (M.D. Tenn. Mar. 30, 2007). Hyundai filed a motion to amend its complaint to reflect its derivative standing (Docket No. 58). The defendants, however, appealed the reversal of the bankruptcy court, and on July 30, 2007, this court entered

3

a second stay (Docket No. 68).

On February 6, 2009, the Sixth Circuit upheld the grant of derivative standing to Hyundai. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 246 (6th Cir. 2009). This court then granted Hyundai's motion to amend (Docket No. 80). Hyundai filed its Second Amended Complaint on July 13, 2009 (Docket No. 85), asserting additional claims, making additional allegations, and substituting itself, in a derivative capacity for the bankruptcy estate, as plaintiff.

## II.    Hyundai's Allegations

In its June 2004 complaint, Hyundai alleged that Trailer Source defaulted on the California settlement agreement with $16.1 million still due. (Docket No. 1 ¶ 10.) The complaint alleged that the defendants had structured a "triangle relationship" among the three dealerships: Southern Trailer would acquire new trailers from Hyundai on credit; Trailer Source sold the new trailers to third parties, receiving cash and used trade-in trailers from the purchasers;[3] and Trailer Source then transferred the used trade-in trailers to JT&T, which was in the business of leasing used trailers. (*Id.* ¶ 13.) Hyundai alleged that between June 30, 2000 and December 31, 2001, Trailer Source transferred $12.4 million worth of used trailers to JT&T, none of which JT&T paid for. (*Id.* ¶¶ 14, 18.) This transfer of assets allegedly rendered Trailer Source unable to pay its creditors. (*Id.* ¶ 19.) Hyundai further alleged that the individual defendants "collectively planned and conspired to structure their aforementioned business

---

[3] Hyundai now alleges that Trailer Source paid neither Southern Trailer nor Hyundai for the new trailers. (Sec. Am. Compl., Docket No. 85, ¶ 13(b)).

4

relationships to deprive the creditors of Southern Trailer and Trailer Source." (*Id.* ¶ 22.) They achieved this by preserving JT&T, "whose assets remain unpledged and unable to be reached." (*Id.*) Hyundai premised its fraudulent conveyance claims on the $12.4 million worth of trailers transferred to JT&T. (*Id.* ¶¶ 25, 30, 36, 42.)

In its Second Amended Complaint ("SAC"), Hyundai replaced all of its individual claims with derivative claims. Hyundai also added allegations regarding Trailer Source's sales activities and cash transfers. Hyundai now alleges that Trailer Source transferred "substantial amounts of cash to Harrell, Williams, Davis, [and JT&T] . . . without any consideration whatsoever." (Sec. Am. Compl., Docket No. 85, ¶ 13(c).) The SAC lists nine such specific transfers, involving millions of dollars, which allegedly took place between March 2001 and January 2002. (*Id.* ¶ 18.)

Hyundai also added several new causes of action to its SAC. It now asserts twelve claims in its derivative capacity: for avoidance and recovery under Bankruptcy Code §§ 548 and 550 (Claims 1 and 2), for avoidance and recovery under Bankruptcy Code §§ 544(b) and 550, pursuant to Tennessee and Alabama fraudulent transfer statutes (Claims 3 through 8), for money had and received (Claim 9), for recovery of illegal distributions pursuant to the Tennessee corporations code (Claim 10), for recovery of payment for goods sold and delivered (Claim 11), and for conversion (Claim 12).

## ANALYSIS

The defendants have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), making numerous arguments and advocating dismissal of every cause of

5

action asserted in Hyundai's SAC. The court will address each argument in turn.

## I.     Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. Deciding whether the allegations imply "more than the mere possibility of misconduct" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

6

A higher pleading standard applies to claims of fraud. When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires allegations about "the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 504 (6th Cir. 2007)). Rule 9(b), however, "should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Id.* at 503. As explained in more detail below, the key consideration is whether the complaint gives the defendant fair notice of the fraud claim and enables the defendant to prepare a responsive pleading. *Id.* at 504.

## II.     Scope of Hyundai's Derivative Standing

The defendants first argue that several of the claims in the SAC are outside the scope of Hyundai's derivative standing. (Defs.' Memo., Docket No. 89, at 7-10.) Specifically, the defendants argue that all the claims other than the fraudulent conveyance claims are barred. Hyundai argues in response that its motion for derivative standing was broad enough to encompass all of its current claims and that, in any event, derivative standing may be granted retroactively. (Pl.'s Resp., Docket No. 103, at 2-3.)

Bankruptcy courts may grant derivative standing to Chapter 7 creditors to pursue fraudulent transfer avoidance claims on behalf of the estate. *In re Trailer Source*, 555 F.3d at 245. In that case, the creditor essentially takes the place of the trustee. A creditor may sue

Case 3:04-cv-00582   Document 111   Filed 10/29/09   Page 7 of 22 PageID #: 1195

derivatively for an avoidance claim if (1) the creditor made a demand that the trustee pursue the claim, (2) the trustee declined, (3) the claim is colorable and would benefit the estate, and (4) the trustee's inaction is an abuse of discretion. *Id.* at 244-45 (citing *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995)). These requirements are critical, because they ensure that derivative standing "does not present [a] risk of interference with the trustee and the bankruptcy court," and they prevent creditors from pursuing derivative claims that are "'quite weak.'" *Id.*

The Sixth Circuit's discussion of the policy underlying the availability of derivative standing makes it clear that such standing applies only to fraudulent transfer avoidance claims. "Congress clearly intended for bankruptcy estates to recover assets fraudulently transferred by the debtor," and granting derivative standing to creditors prevents the bankruptcy system from "'break[ing] down'" when a trustee "unjustifiably refuses to bring an avoidance action under [Bankruptcy Code] § 544(b)." *Id.* at 242-43; *see also In re The Gibson Group*, 66 F.3d at 1438 (holding that derivative standing is appropriate "if such standing furthers Congress's purpose in creating the avoidance actions found in [Bankruptcy Code] §§ 547 and 548"). Indeed, the court of appeals' entire discussion in *Trailer Source* and *Gibson Group* is framed in terms of derivative standing for a trustee's avoidance actions.

Here, Claims 9 through 12 of the SAC do not fall within the scope of the derivative standing granted to Hyundai. These claims are for money had and received, illegal distributions to shareholders pursuant to Tennessee's corporations code (Tenn. Code Ann. § 48-16-401), recovery of payment for goods sold and delivered, and conversion. Such claims, which go

8

beyond the avoidance claims expressly provided for in the Bankruptcy Code, are not the type of claims contemplated by the Sixth Circuit when it endorsed derivative standing in *Trailer Source*.

Furthermore, these derivative claims were never authorized by any court. In its motion to the bankruptcy court, Hyundai explicitly requested standing to pursue "any transfer avoidance actions based upon 11 U.S.C.S. § 544(b), 550 and any applicable *fraudulent transfer avoidance statutes*." (Docket No. 89, Ex. A, at 6 (emphasis added).) Hyundai's motion made no mention of common law claims or claims under a state's corporations code, and it supports no inference that Hyundai ever demanded that the trustee file such claims. Avoidance claims were the only claims at issue when this court and the Sixth Circuit granted derivative standing. *See, e.g.*, *In re Trailer Source*, 2007 U.S. Dist. LEXIS 23816 at *6 ("Hyundai moved for derivative standing to pursue . . . the fraudulent transfer claims on behalf of the bankruptcy estate"); *In re Trailer Source, Inc.*, 555 F.3d at 239 (framing case as involving "avoidance claims against the JT&T parties pursuant to two statutory provisions" – §§ 544(b)(1) and 550(a) – "that authorize an estate to recover assets wrongfully transferred from the debtor"). Because Hyundai was never granted permission to bring these additional derivative claims, it cannot assert Claims 9 through 12.[4]

The plaintiff argues that this court should nevertheless retroactively grant derivative

_____

[4] The defendants also seek dismissal of Claims 1 and 2 on these grounds. But those claims are based on Bankruptcy Code § 548, which allows a trustee to file avoidance claims. The Sixth Circuit allows derivative standing under § 548, *In re the Gibson Group*, 66 F.3d at 1442, and Hyundai's motion for derivative standing expressly stated that it sought to sue under "any applicable fraudulent transfer avoidance statutes." The § 548 claims are thus within the scope of Hyundai's derivative standing. As discussed below, however, these claims will be dismissed on other grounds.

9

standing for the claims, citing *PW Enterprises, Inc. v. North Dakota Racing Commission (In re Racing Services, Inc.)*, 540 F.3d 892 (8th Cir. 2008).  (Docket No. 103 at 4-5.)  In *Racing Services*, the Eighth Circuit rejected a per se rule that a creditor's motion for a retroactive grant of derivative standing must be denied simply because it is filed after the creditor's complaint.  *Id.* at 903-04; *see also Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*, 326 B.R. 532, 545-46 (W.D. Pa. 2005) (collecting other cases that have allowed retroactive standing).  But *Racing Services* involved a ruling on the creditor's initial derivative standing motion.  540 F.3d at 896-97.  Here, in contrast, Hyundai has already received a grant of derivative standing, and it seeks to expand the scope of the standing.  The court declines Hyundai's invitation to treat its response brief as a motion for supplemental derivative standing.  Bankruptcy court is the proper venue for such a motion, and, regardless, Hyundai would need to show that Claims 9 through 12 satisfy the *Gibson Group* factors – an issue that Hyundai does not even attempt to address.  Accordingly, the court will dismiss Claims 9 through 12.[5]

### III.    Hyundai's § 548 Claim

Claims 1 and 2 of the SAC are claims under Bankruptcy Code § 548, which allows a trustee to avoid fraudulent transfers by the debtor.  Under the current version of § 548, a trustee's claims are valid if they are based on fraudulent transfers that occurred less than two years before the bankruptcy petition was filed.  11 U.S.C.S. § 548(a)(1).  The previous version of the statute specified a one-year period, however, and that is the applicable period for bankruptcy petitions

---

[5] The defendants have presented additional arguments for dismissing these claims, but the court finds it unnecessary to reach them.

filed before the new statute's adoption in April 2005. *Burtch v. Dent (In re Circle Y of Yoakum, Tex.)*, 354 B.R. 349, 354-55 (Bankr. D. Del. 2006).

Hyundai filed the Trailer Source bankruptcy petition on January 6, 2005, so the one-year period applies here. But the most recent fraudulent transfers alleged in the SAC are cash transfers in January 2002. (Docket No. 85 ¶ 18.) None of the SAC's allegations involve transfers that took place within one year of the filing of the bankruptcy petition. Hyundai concedes as much, and it asks for dismissal without prejudice in case it finds evidence of such transactions once discovery begins. (Docket No. 103 at 5.) The court will dismiss Claims 1 and 2 without prejudice.

## IV.     Equitable Tolling of the § 546 limitations period

In the SAC, Hyundai has added allegations regarding the transfer of millions of dollars of cash from Trailer Source to the defendants, and it has incorporated these allegations into its fraudulent conveyance claims. The defendants argue that these new allegations are untimely under the statute of limitations in Bankruptcy Code § 546(a). (Docket No. 89 at 11-12.) The court finds that this limitations period was equitably tolled.[6]

Bankruptcy Code § 546(a) provides that a trustee may not commence a § 544 action later than two years after the entry of relief. 11. U.S.C.S. § 546(a)(1)(B). But courts may, in proper circumstances, apply equitable tolling to this limitations period. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt.)*, 14 F.3d 1380, 1385 (9th Cir. 1994). Equitable tolling is proper "when

---

[6] Because the court will apply equitable tolling, it is unnecessary to address the issue of whether the allegations regarding cash transfers relate back to Hyundai's initial complaint.

the trustee, despite the exercise of due diligence, is prevented from asserting a cause of action . . . because of extraordinary circumstances beyond the trustee's control which make it impossible to file the action within the limitations period." *Lee v. Nat'l Home Ctrs., Inc. (In re Bodenstein)*, 253 B.R. 46, 50 (B.A.P. 8th Cir. 2000). More generally, the Sixth Circuit has stated that, in evaluating assertions of equitable tolling, the court looks to: "'(1) lack of actual notice of [the] filing requirement; (2) lack of constructive knowledge of [the] filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" *Bledsoe*, 501 F.3d at 519 (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)).

Here, the limitations period started running on February 14, 2005, when the bankruptcy court filed the entry of relief. Hyundai filed its motion for grant of derivative standing on December 9, 2005, which the bankruptcy court denied on February 21, 2006. Hyundai appealed that decision, as well as four other subsequent rulings, to this court on June 6, 2006. This court granted derivative standing on March 30, 2007, after the two-year limitations period had already expired. Hyundai filed a motion to substitute itself as plaintiff in a derivative capacity and to amend the complaint on June 20, 2007.[7]

The situation here is analogous to that in *Bledsoe*. There, the plaintiff filed a suit regarding fraud that allegedly occurred in 1998 and earlier. 501 F.3d at 497. The district court

_____

[7] The date that Hyundai filed its motion to amend is the relevant date here. "Federal courts have uniformly held that a claim set forth in an amended pleading is timely under the applicable statute of limitations, if the motion for leave to amend was filed before the statute of limitations had run." *United States v. Katz*, 494 F. Supp. 2d 641, 644 (S.D. Ohio 2006).

12

eventually dismissed the claims in September 2001, and the plaintiff filed a timely appeal. *Id.* at 500. The Sixth Circuit decided the appeal on September 10, 2003 and directed the plaintiff to file an amended complaint containing more concrete allegations. *Id.* The plaintiff filed an amended complaint on May 18, 2004. *Id.* The district court dismissed the new allegations as time-barred because the most recent instance of alleged fraud took place on January 6, 1998, which meant that the six-year limitations period had expired on January 6, 2004. The district court refused to apply equitable tolling because the two-month period between the denial of a rehearing in November 2003 and January 6, 2004 "would have been sufficient" for plaintiff to file an amended complaint. *Id.* at 520.

The Sixth Circuit disagreed. The only relevant tolling factors were the plaintiff's diligence in pursuing his claims and the potential prejudice to the defendant. *Id.* at 519. The court found that the plaintiff had diligently pursued his rights, so the limitations period for all claims was tolled during the pendency of the appeal. Because "many of [plaintiff's] specific allegations were already barred by the statute of limitations at the time he was granted leave to amend," he "did not act with a lack of diligence" by filing his amended complaint six months after the appeal was decided. *Id.* at 520.

Here, there is no question that Hyundai diligently pursued its derivative claims. The § 546(a) limitations period expired on February 14, 2007, but this court did not issue its ruling reversing the bankruptcy court's denial of derivative standing until March 2007. Thus, as in *Bledsoe*, Hyundai's derivative claims were already untimely when this court decided the appeal. Hyundai filed its motion to amend in June 2007, less than three months later. Nothing suggests

13

that Hyundai was dilatory in filing any documents, including its initial motion for a grant of

derivative standing and its appeal to this court.  Furthermore, the defendants are not prejudiced

by this application of equitable tolling.  First, Hyundai filed its motion to amend a mere four

months after the expiration of the limitations period.[8]  Second, the defendants were on notice that

Hyundai would assert fraudulent transfer claims if it were eventually granted derivative standing.

The initial complaint contained allegations regarding the trailer transfers, and Hyundai's

derivative standing motion referred to almost $2 million in allegedly fraudulent cash transfers.

(Docket No. 89, Ex. A, at 4.)

The defendants argue that Hyundai took no action to preserve the statute of limitations,

such as seeking a tolling agreement from the defendants.  (Defs.' Reply, Docket No. 105, at 11.)

But seeking a tolling agreement, which the defendants could easily have refused, is not a

necessary component of diligence in pursing a claim.  The defendants also claim that Hyundai is

bound by the trustee's decision to not pursue the avoidance claims within the statutory period.

(*Id.*)  But the entire purpose of seeking derivative standing is to pursue claims that a trustee

cannot or will not pursue.  Because Hyundai was timely and diligent in seeking derivative

standing, the court finds that equitable tolling applies and that Hyundai's avoidance claims are

not time-barred.

## V.    Sufficiency of Hyundai's Allegations

The defendants further argue that Hyundai has not pleaded its allegations of fraud with

---

[8] The defendants do not argue the new allegations would have been untimely if the SAC
had been filed on or before February 14, 2007.

enough specificity.  (Docket No. 89 at 14-16; Docket No. 105 at 13-14.)  As mentioned above, Federal Rule of Civil Procedure 9(b) states that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud."

The Sixth Circuit has explained the overarching purpose of Rule 9(b):

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules.  Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."

*SNAPP*, 532 F.3d at 504 (citations omitted).  "So long as a [plaintiff] pleads sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met."  *Id.*  "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide[] examples of specific' fraudulent conduct that are 'representative samples' of the scheme."  *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444-45 (6th Cir. 2008) (quoting *Bledsoe*, 501 F.3d at 510).

Here, Hyundai has sufficiently alleged that the defendants created a scheme in which Trailer Source fraudulently transferred its assets to avoid paying its creditors.  (Docket No. 85 ¶ 13).  The SAC provides representative transactions that illustrate how Trailer Source received cash and used trailers from its sales of new Hyundai trailers and how it transferred those assets to the defendants.

Hyundai alleges details regarding three specific series of new trailer sales by Trailer

15

Source.  The SAC identifies the customer, the months in which the sales took place, the number

of new Hyundai trailers that were sold, and the amount of cash and number of used trailers that

Trailer Source accepted in payment.  (Docket No. 85 ¶ 14-16.)  For example, in September,

November, and December 2001, Trailer Source allegedly sold 883 new trailers to Covenant

Transport, Inc. in return for $10.9 million in cash and 825 used trailers, worth $6.2 million.  (*Id.*

¶ 14.)  Hyundai also identifies a fourth transaction in October 2001, in which Trailer Source

purchased 54 used trailers from Covenant Transport, Inc. for $922,720.  (*Id.* ¶ 19.)

Hyundai further alleges that "a substantial number of the used trailers taken in trade and

otherwise acquired by Trailer Source were transferred to [JT&T] for no consideration

whatsoever."  (*Id.* ¶ 20.)  The SAC states that Hyundai "has identified approximately 341 used

trailers so transferred by vehicle identification number (VIN), year, make, model and acquisition

cost.  The purchase cost of these 341 trailers to Trailer Source was approximately

$2,363,068.00."  (*Id.*)  These 341 trailers are identified as "trade-ins from Covenant Transport

and Danny Herman Trucking."[9]  (*Id.*)  Hyundai further alleges that "substantial numbers of

additional trade in trailers" acquired from Landair Transport, Inc. were transferred to JT&T, and

that Trailer Source sold another 289 used trailers to JT&T for $2,081,561.00 between May 2001

_____

[9] Hyundai did not actually attach a list of vehicle identification numbers for the 341
trailers it has identified, although such a list was attached to its Motion for Grant of Derivative
Standing in bankruptcy court.  (Docket No. 103 at 19.)  The main thrust of the defendants' Rule
9(b) argument is that Hyundai should have attached a list of the VINs.  (*See* Docket No. 89 at 15;
Docket No. 105 at 13-14.)  In response, Hyundai has offered to file an amended complaint
attaching this list as an exhibit.  (*Id.* at 19 n.8.)  But the identification of the trailers as trade-ins
from two specific third parties, taken in conjunction with the numerous other specific allegations
in the SAC, is sufficient to meet Hyundai's pleading burden.

and August 2002.  (*Id.* ¶¶ 20-21.)  JT&T allegedly did not pay the invoices on these trailers.  (*Id.* ¶ 21.)

Hyundai also specifically identifies nine cash transfers from Trailer Source to the defendants and related third parties.  For example: "In January 2002, at the request of Harrell, $411,000 cash was transferred by Trailer Source to Harrell's wholly owned corporation, MCH Transportation."  (*Id.* ¶ 18(e).)  For each of the alleged transfers, Hyundai specifies the amount and the recipient.  For seven of the transfers, Hyundai lists the month in which the transfer took place; for one, Hyundai alleges the specific day.  (*Id.* ¶ 18(b-i).)  The other alleged transfer consisted of "a series of transactions" that took place between March and November 2001.  (*Id.* ¶ 18(a).)

In sum, the SAC's allegations identify: (1) several specific examples of new trailer sales by Trailer Source, which explains how the company acquired cash and used trailers; (2) numerous specific examples of cash transfers to the defendants; and (3) details regarding certain transfers of used trailers to JT&T.  This is enough to allow the defendants to craft an informed responsive pleading.  *See, e.g.*, *Source One v. Challenge*, No. 09-12375, 2009 U.S. Dist. LEXIS 98147, at *23-24 (E.D. Mich. Oct. 22, 2009) (refusing to dismiss fraud claim because the plaintiff sufficiently described the alleged scheme).

The cases cited by the defendants do not compel a different outcome.  In *Eastwood v. United States*, No. 2:06-cv-164, 2007 U.S. Dist. LEXIS 71892, at *11 (E.D. Tenn. 2007), the defendant's fraudulent conveyance counterclaim "fail[ed] to allege the time, place, and amount of the conveyance, or the injury the Defendants suffered."  In *United States v. Buaiz*, No.

17

3:07-cv-83, 2008 U.S. Dist. LEXIS 100393, at *7-8 (E.D. Tenn. 2008), the plaintiff did not

adequately plead the fraudulent nature of the alleged scheme and instead simply listed the dates

on which certain parcels of land were conveyed.  In contrast, as discussed above, the allegations

here detail the defendants' fraudulent scheme.  The SAC does more than "simply recite the

statutory elements of fraud without adequate factual support."  *In re Circle Y*, 354 B.R. at 356.

Accordingly, the court will not dismiss Hyundai's claims for lack of specificity.

## VI.     Applicability of the Alabama Fraudulent Transfer Act

Claims 7 and 8 are claims under Bankruptcy Code §§ 544 and 550, pursuant to the

Alabama Fraudulent Transfer Act, Ala. Code § 8-9A-9, *et seq.*  Section 544 allows a trustee to

void any transfer that is "voidable under applicable law by a creditor holding an unsecured

claim."  11 U.S.C.S. § 544(b)(1).  The defendants, citing no case law, argue that nothing in the

SAC "remotely suggest[s]" that Hyundai can bring any claims under Alabama law.  (Docket No.

89 at 16.)  But Hyundai has alleged that Southern Trailer (1) is an Alabama corporation and (2)

is a creditor of Trailer Source.[10]  (Docket No. 85 ¶¶ 9, 22.)  Hyundai further alleges that Southern

Trailer transferred new trailers to Trailer Source, receiving no payment in return.  (*Id.* ¶ 13(b).)

Broadly speaking, Hyundai has alleged that the defendants used Southern Trailer in their scheme

to transfer assets among the three commonly controlled dealerships.  (*Id.* ¶¶ 11, 13.)  Because of

---

[10] The plaintiff also alleges that the Alabama Department of Revenue is a creditor of
Trailer Source.  (Docket No. 85 ¶ 22.)  The defendants argue that Southern Trailer and the
Alabama Department of Revenue are not listed on the claims register in the Trailer Source
bankruptcy.  (Docket No. 105 at 15.)  But, on a Rule 12(b)(6) motion to dismiss, the court will
not consider evidence extrinsic to the pleadings to evaluate the plaintiff's factual allegations.
*Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009).

18

these allegations, the court will not dismiss Claims 7 and 8.

## VII.    Availability of Punitive Damages

The defendants argue that Hyundai cannot recover punitive damages for its Bankruptcy Code §§ 544 and 550 claims.  (Docket No. 89 at 16.)  In response, Hyundai argues that the relevant Tennessee and Alabama fraudulent transfer statutes allow punitive damages.  (Docket No. 103 at 26-27.)

The plaintiff has asserted its fraudulent conveyance claims in pairs – one claim for avoidance under Bankruptcy Code § 544, and one claim for recovery of the value of the avoided transfer under § 550.  Section 544(b) empowers a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor."  11 U.S.C.S. § 544(b)(1).  Section 550 then allows a trustee, when "a transfer is avoided under section 544," to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  *Id.* § 550(a).  Hyundai asserts three sets of §§ 544 and 550 claims, based on Tennessee and Alabama fraudulent transfer statutes.

Hyundai cites state court cases interpreting the Tennessee and Alabama statutes in its attempt to show that it can recover punitive damages here.  (Docket No. 103 at 26-27.)  But none of the plaintiff's cases address the remedies available to a trustee under the relevant provisions of the Bankruptcy Code.  *See Orlando Residence v. Nashville Lodging Co.*, No. 01-A-01-9606-CH-00256, 1996 Tenn. App. LEXIS 818, at *16 (Tenn. Ct. App. Dec. 18, 1996); *Johns v. A.T. Stephens Enters.*, 815 So. 2d 511, 517-18 (Ala. 2001).  The plaintiff is not suing

19

directly under the state statutes, but instead under §§ 544 and 550 in a derivative capacity.[11]

Hyundai's exact argument was addressed by the bankruptcy court in *Sherman v. FSC Realty LLC (In re Brentwood-Lexford Partners, LLC)*, 292 B.R. 255 (Bankr. N.D. Tex. 2003). "[Bankruptcy Code] Section 550 does not provide for the recovery of exemplary damages. . . . [T]he court cannot invoke state law remedies to circumvent or undermine the specific remedy legislated by Congress for the avoidance of a fraudulent transfer." *Id.* at 275 (addressing a § 550 claim for a transfer avoided under § 544(b)). Accordingly, the court will dismiss Hyundai's prayer for punitive damages on Claims 3, 4, 5, 6, and 8.[12]

## VIII. Claims Against Defendant Lazarus

The defendants argue that all claims against defendant Lazarus should be dismissed because Hyundai has merely alleged that he conspired with and aided and abetted the other defendants. (Docket No. 89 at 21-22; *see also* Docket No. 85 ¶¶ 6, 11-13.) Hyundai cites state court cases for the proposition that conspiracy to fraudulently transfer property is a recognized cause of action in Tennessee and Alabama. (Docket No. 103 at 28-30.)

Again, the state court cases cited by Hyundai are irrelevant, because the question here is the scope of Bankruptcy Code §§ 544 and 550, not the scope of state law. Section 544(b) speaks only to avoiding transfers, and § 550(a) provides only that the trustee may recover damages from

_____

[11] Hyundai argues that, even if §§ 544(b) and 550 do not allow for recovery of punitive damages, it is "nevertheless entitled to recover standing in the shoes of Trailer Source under 11 U.S.C. § 541(a) and a reasonable reading of this Court's grant of derivative standing." (Docket No. 103 at 27.) Hyundai's theory is apparently that it should be able to assert a claim for breach of fiduciary duty against the individual defendants. But, for the reasons discussed above, Hyundai is limited to asserting only avoidance and recovery claims under §§ 544(b) and 550.

[12] Hyundai has not requested punitive damages for Claim 7. (*See* Docket No. 85 at 16.)

20

a "transferee." Bankruptcy courts have consistently held that neither § 544(b) nor § 550 authorizes a trustee to pursue conspiracy or "aiding and abetting" state law claims. *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 549 (Bankr. D. Del. 2009) (citing *Wyle v. Howard (In re Hamilton Taft & Co.)*, 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995); *In re Brentwood-Lexford*, 292 B.R. at 275). Furthermore, "the authorities are . . . clear that there is no such thing as liability for aiding and abetting a fraudulent conveyance or conspiracy to commit a fraudulent transfer as a matter of federal law under the Code." *Id.* Accordingly, the court will dismiss all claims as to defendant Lazarus.

## IX. Claims Against Defendants Harrell and Williams

Finally, the defendants argue that the §§ 554 and 550 claims against defendants Harrell and Williams should be dismissed to the extent the claims are premised on the transfer of trailers, because Hyundai has not alleged that they were the transferees or beneficiaries of any trailers. But the plaintiff does allege that Trailer Source transferred cash to these defendants (Docket No. 85 ¶¶ 13, 18), and it is possible that the allegations in the SAC could support piercing JT&T's corporate veil. *See Schlater v. Haynie*, 833 S.W.2d 919, 926 (Tenn. Ct. App. 1991) (noting that the corporate veil will not be pierced to reach controlling shareholders "so long as they do not use the control to defraud creditors of the corporation"). Accordingly, the court will not dismiss Claims 3 through 8 as to Harrell and Williams.

## CONCLUSION

For all the reasons discussed above, the court will: (1) dismiss Claims 1 and 2 without

prejudice; (2) dismiss Claims 9 through 12; (3) dismiss all claims as to defendant Lazarus; and

(4) dismiss Hyundai's prayer for punitive damages.  Claims 3 through 8 will remain.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge