IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HYUNDAI TRANSLEAD, INC. ) | |
| *Ex rel.* the Estate of Trailer Source, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04-cv-0582 |
| ) | Judge Trauger |
| JACKSON TRUCK & TRAILER ) | |
| REPAIR INC., *et al.*, ) | |
| ) | |
| Defendants/Counter-Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HYUNDAI TRANSLEAD, INC., ) | |
| ) | |
| Counter-Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Determination filed by defendants Jackson Truck & Trailer Repair, Inc., James A. Harrell, and Raleigh J. Williams[1] (Docket No. 108), the plaintiff's response (Docket No. 113), and the defendants' reply (Docket No. 116). For the reasons discussed below, the defendants' motion will be denied.

## BACKGROUND

From 2000 to 2002, plaintiff Hyundai Translead, Inc. ("Hyundai"), a manufacturer of semi-truck trailers, sold trailers to Southern Trailer and Equipment Sales, Inc. ("Southern

---

[1] The court previously dismissed all claims against defendant Mark Lazarus. (Docket No. 112.) Accordingly, "defendants" will refer only to Jackson Truck & Trailer Repair, Inc., Harrell, and Williams.

1

Trailer"), a dealership in which defendants Harrell and Williams owned a controlling interest.[2]
Harrell and Williams also owned controlling interests in two other trailer dealerships, Jackson Truck & Trailer Repair, Inc. ("JT&T") and Trailer Source, Inc. ("Trailer Source").

In 2002, Hyundai filed suit in the Superior Court of San Diego County, California against the three dealerships, Harrell, Williams, and Mark Lazarus (the chief financial officer of JT&T and Trailer Source), alleging that Hyundai had delivered more than $44 million in trailers to Southern Trailer but had received only $26 million in payment. Hyundai alleged that Southern Trailer had fraudulently conveyed trailers, which otherwise could have been used to settle its debt to Hyundai, to the other dealerships. Hyundai also asserted various other claims, including breach of contract.

In August 2002, Hyundai settled with all of the defendants in the California action. Southern Trailer and Trailer Source agreed to pay approximately $21 million to Hyundai in installments, and Hyundai voluntarily dismissed the suit with prejudice. The settlement agreement gave Hyundai a security interest in Trailer Source's accounts, equipment, and inventory. The agreement stated that the parties "desire[d] to settle, compromise, and forever resolve . . . the [California action], all claims they have asserted or could assert against each other in the [California action], and all other claims, rights, and obligations between them with respect thereto." (Docket No. 109, Ex. 3 § 2.7.) Hyundai agreed to release the California defendants from all claims, known or unknown, "arising out of any acts or omissions occurring

---

[2] Unless otherwise noted, factual allegations and procedural history are drawn from the parties' submissions and this court's October 29, 2009 memorandum regarding the defendants' Motion to Dismiss (Docket No. 111).

2

prior to the execution of this Settlement Agreement." (*Id.* § 12.1.) The parties were not, of course, released from their obligations under the settlement agreement itself. The agreement was fully executed on August 22, 2002.

In October 2003, Trailer Source defaulted on the settlement agreement with $16.1 million still due. The instant suit began on June 30, 2004, when Hyundai filed a complaint against JT&T, Harrell, Williams, Lazarus, and Jeffrey G. Davis.[3] Hyundai alleged that the defendants had fraudulently transferred Trailer Source's assets to avoid paying the company's creditors, asserting claims for fraudulent transfer and other torts. (Docket No. 1 ¶¶ 24-60.) On September 23, 2004, Hyundai amended the complaint to add claims for rescission and reformation of the California settlement agreement. (Docket No. 17 ¶¶ 61-66.)

On January 6, 2005, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source. Proceedings in this court were stayed, and the dispute moved to bankruptcy court under the caption *In re Trailer Source, Inc.*, No. 3:05-bk-00148 (Bankr. M.D. Tenn.). The bankruptcy court appointed Samuel K. Crocker as trustee in the Trailer Source bankruptcy. Hyundai contacted Crocker to request that he investigate the fraudulent transfer claims, but Crocker decided against it, citing a lack of funds to pay the investigation and litigation costs.

Hyundai moved for a grant of derivative standing for it to pursue the fraudulent transfer claims on behalf of the bankruptcy estate, which the bankruptcy court denied. The bankruptcy court then approved a $50,000 settlement with JT&T, negotiated by Crocker, of all potential fraudulent transfer claims. Hyundai appealed, and this court reversed the bankruptcy court,

---

[3] Davis, who was a shareholder of JT&T, is no longer a party to this action.

3

granting derivative standing to Hyundai and denying approval of Crocker's settlement. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, No. 3:06-0573, 2007 U.S. Dist. LEXIS 23816 (M.D. Tenn. Mar. 30, 2007). The Sixth Circuit affirmed the grant of derivative standing. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 246 (6th Cir. 2009).

On July 13, 2009, Hyundai filed its Second Amended Complaint (Docket No. 85), which added certain allegations and substituted itself, in a derivative capacity for the Trailer Source bankruptcy estate, as plaintiff. The complaint alleges that the defendants structured a "triangular relationship" among the three dealerships: Southern Trailer would acquire new trailers from Hyundai on credit; Trailer Source sold the new trailers to third parties, receiving cash and used trade-in trailers from the purchasers; and Trailer Source then transferred the used trade-in trailers to JT&T, which was in the business of leasing used trailers. (*Id.* ¶ 11.) Hyundai alleges that, between 2000 and 2003, Trailer Source transferred millions of dollars worth of used trailers to JT&T, none of which JT&T paid for. (*Id.* ¶¶ 13-17.) The complaint lists several examples of such transfers, each occurring in or before August 2002. Hyundai also alleges that between March 2001 and January 2002, the defendants transferred millions of dollars of cash from Trailer Source to themselves and their companies. (*Id.* ¶ 18.)

The defendants filed a Motion to Dismiss the Second Amended Complaint, and on October 29, 2009, the court dismissed all claims except for three sets of fraudulent transfer avoidance and recovery claims. (Docket No. 112.) Those claims allege that the defendants undertook the transfers of trailers and cash to avoid Trailer Source's debts.

4

In their opposition to Hyundai's efforts to gain derivative standing, the defendants repeatedly argued that res judicata bars Hyundai from satisfying its bankruptcy claim from the proceeds of the estate's avoidance action. The defendants based their argument on *Williams v. Marlar (In re Marlar)*, 267 F.3d 749 (8th Cir. 2001). The court previously indicated that this argument is more appropriately raised "at the time that Hyundai's claim against the estate is adjudicated." *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, No. 3:06-0573, 2007 U.S. Dist. LEXIS 31323, at *16 (M.D. Tenn. Apr. 27, 2007). But during a September 10, 2009 case management conference, the defendants asserted that the *Marlar* issue is critical and could determine the shape of this litigation. The court directed the defendants to file the instant motion.

## ANALYSIS

The defendants have filed a Motion for Determination that Hyundai Translead, Inc. is Barred from Participating in Estate Recovery Arising Out of this Action and to Limit Avoidance Damages. They seek first to bar Hyundai from satisfying its bankruptcy claim from any assets recovered pursuant to the derivative fraudulent transfer claims, and then to cap that recovery at the sum of the bankruptcy claims filed by non-Hyundai creditors.

### I. The *Marlar* Decision

Because the defendants' argument hinges on the application of the Eighth Circuit's *Marlar* decision, the court will first examine that case. *Marlar* involved the marriage and subsequent divorce of John S. Marlar and Paula Davis. In 1986, two days before the wedding, Marlar conveyed hundreds of acres of farmland to his son for the price of ten dollars. 267 F.3d

5

at 752-53. The son recorded the deed in 1995, during Marlar and Davis' contested divorce proceedings. *Id.* In the divorce, Davis was awarded a $52,000 judgment secured by an equitable lien on any interest Marlar had in the farmland. *Id.*

Davis then sued in Arkansas state court to set aside the 1986 conveyance under the Arkansas Fraudulent Transfer Act. The Arkansas court "rejected Davis's suit," concluding (1) that there was no evidence that Marlar had intended to defraud creditors and (2) that Davis' constructive fraud claim failed because she had actual notice of the transfer. *Id.* at 753. Less than one month after losing in state court, Davis and two other creditors filed a petition for involuntary bankruptcy against Marlar. *Id.* Relying on the Arkansas Fraudulent Transfer Act, the bankruptcy trustee filed an action under Bankruptcy Code § 544 to avoid the 1986 conveyance and to bring the farmland into Marlar's bankruptcy estate. *Id.* The bankruptcy court granted summary judgment to the trustee. *Id.* Marlar appealed, arguing that the bankruptcy court's decision violated res judicata.

First, the Eighth Circuit held that, although res judicata would bar Davis herself from once again challenging the conveyance, the trustee's actions were not barred. *Id.* at 754. Under Bankruptcy Code § 544, a trustee can bring an avoidance action if the transfer at issue is "voidable under applicable law by a[n unsecured] creditor." 11 U.S.C. § 544(b)(1). Although the trustee "had no avoidance power based upon Davis's rights under Arkansas law," the trustee could pursue the claim because the other two creditors could challenge the conveyance. *Id.*

Second, and more relevant to the instant motion, the court found that Davis could not satisfy her bankruptcy claim from any assets recovered in the trustee's avoidance action. The

6

Eighth Circuit's discussion of the matter was brief:

> [T]o foreclose a future appeal from the bankruptcy proceeding, we will address an additional issue. Paula Davis has a state court [divorce] judgment and therefore a claim against Marlar's bankruptcy estate. But a subsequent state court judgment determined that she may not use the Arkansas Fraudulent Transfer Act to enforce her divorce decree against the real property here at issue. Now Davis seeks to avoid the bar of the latter judgment by having that property included in Marlar's bankruptcy estate and applied to satisfy her claim against the estate. This she may not do, because the result would be contrary both to principles of res judicata under Arkansas law, and to principles of comity reflected in the federal Rooker/Feldman doctrine. As the Supreme Court said in *Heiser v. Woodruff*, 327 U.S. 726, 732-33, 90 L. Ed. 970, 66 S. Ct. 853 (1946) (citations omitted):
>
>> It is true that a bankruptcy court is also a court of equity, and may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims . . . . But we are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata, which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court.
>
> Accordingly, we direct the bankruptcy court not to satisfy the bankruptcy claim of Paula Davis, directly or indirectly, from any asset that has become a part of Marlar's bankruptcy estate by reason of this adversary proceeding.

*Id.* at 756.

## II.     Applying the *Marlar* Rule to this Case

The issue dispositive of the defendants' motion is whether the rule in *Marlar* controls this case. The defendants argue that California res judicata law and the terms of the settlement agreement prevent Hyundai from litigating the fraudulent transfer claims in an individual

7

capacity.[4] (Docket No. 109 at 9-17.) Under *Marlar*, they argue, Hyundai is thus "barred from sharing in the proceeds of any estate recovery against [the defendants] based on the alleged fraudulent transfers to satisfy its claims against the estate."[5] (*Id.* at 20.)

But this case differs from *Marlar* in one essential respect: Hyundai never suffered a loss in state court. The California court never determined that Hyundai's fraudulent transfer claims were without merit, and Hyundai did not file this suit in an effort to make an end run around any adverse ruling. Instead, the California action settled, and this case arose only after Trailer Source defaulted on its obligations under the settlement agreement.

In *Marlar*, the Eighth Circuit was explicitly motivated by the fact that the creditor was trying to avoid the consequences of losing in state court. 267 F.3d at 756. In response to the fundamental unfairness of the creditor's actions, the court fashioned a rule to address the unique situation before it. In doing so, it sought a result that was consistent with the "'generally recognized public policy'" of res judicata: specifically, that, "'when one appears in court to

---

[4] For the purposes of this motion, the court will assume, without deciding, that this is correct.

[5] Crocker, the trustee, filed a five-page memorandum in support of the defendants' Motion for Determination (Docket No. 110). The plaintiff filed a Motion to Strike that memorandum (Docket No. 114). Because Crocker is not a party to this case, the court will grant the Motion to Strike. *See, e.g.*, *Coalition to Defend Affirmative Action v. Granholm*, 240 F.R.D. 368, 377 (E.D. Mich. 2006) (striking a motion to dismiss filed by non-party).

In any event, Crocker's memorandum does not add anything relevant to the content of the defendants' memorandum. The primary takeaway is that Crocker has believed all along that the *Marlar* rule applies here. (*See* Docket No. 110 at 4-5.) Crocker also argues that, without Hyundai's derivative avoidance action, it would be easier for him to administer the claims of non-Hyundai creditors, which total just over $48,000. (*Id.*) This argument is unavailing. The court has already found that the derivative claims are colorable and will likely benefit the estate. *In re Trailer Source, Inc.*, 2007 U.S. Dist. LEXIS 23816 at *33-34.

present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court.'" *Id.* (quoting *Heiser v. Woodruff*, 327 U.S. 726, 732-33 (1946)). The court also looked to "the principles of comity reflected in the federal Rooker/Feldman doctrine," *id.*, a doctrine that "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Neither res judicata nor *Rooker-Feldman* applied directly to the circumstances in *Marlar*.

The key question, then, is whether it is contrary to the policy considerations enunciated in *Marlar* to allow Hyundai to satisfy its bankruptcy claim from any eventual proceeds of this derivative action. The court finds that such recovery would not be contrary to those principles. Hyundai never had a "contested issue . . . decided against [it]." *Marlar*, 267 F.3d at 756 (citation omitted). The California court never "determined that [Hyundai] may not use" fraudulent transfer statutes to avoid the defendants' transfers. *Id.* Simply put, Hyundai was not a state-court loser in the sense that the *Marlar* creditor was. The defendants ignore the difference between a final judgment resulting from an adverse finding of fact or law – as in *Marlar* – and a final judgment resulting from a voluntary dismissal that follows a settlement. Although a voluntary dismissal might function as a judgment on the merits for res judicata purposes, the two are not the same for the purposes of determining the fundamental fairness of Hyundai's actions. Because Hyundai's efforts are not aimed at undermining any factual or legal findings of a state court, they do not implicate the policy considerations that drove the Eighth Circuit's decision.

9

Accordingly, the court will not apply the *Marlar* rule.[6]

## **CONCLUSION**

For all of the reasons discussed above, the defendants' Motion for Determination will be denied and the plaintiff's Motion to Strike will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[6] The defendants' request to limit the amount of damages available on the fraudulent transfer claims is thus moot.

10