IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HYUNDAI TRANSLEAD, INC. ) | |
| *Ex rel.* the Estate of Trailer Source, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04-cv-0582 |
| ) | Judge Trauger |
| JACKSON TRUCK & TRAILER ) | |
| REPAIR INC., *et al.*, ) | |
| ) | |
| Defendants/Counter-Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HYUNDAI TRANSLEAD, INC., ) | |
| ) | |
| Counter-Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion to Certify Order for Appeal filed by defendants Jackson Truck & Trailer Repair, Inc., James A. Harrell, and Raleigh J. Williams[1] (Docket No. 121), plaintiff Hyundai Translead, Inc.'s response (Docket No. 124), and the defendants' reply (Docket No. 127). Also pending is the plaintiff's Motion to Dismiss Counterclaim (Docket No. 118) and the defendants' response (Docket No. 123). For the reasons discussed below, both motions will be denied.

## BACKGROUND

---

[1] The court previously dismissed all claims against defendant Mark Lazarus. (Docket No. 112.) Accordingly, "defendants" will refer to Jackson Truck & Trailer Repair, Inc., Harrell, and Williams.

1

From 2000 to 2002, plaintiff Hyundai Translead, Inc. ("Hyundai"), a manufacturer of semi-truck trailers, sold trailers to Southern Trailer and Equipment Sales, Inc. ("Southern Trailer"), a dealership in which defendants Harrell and Williams owned a controlling interest.[2] Harrell and Williams also owned controlling interests in two other trailer dealerships, Jackson Truck & Trailer Repair, Inc. ("JT&T") and Trailer Source, Inc. ("Trailer Source").

In 2002, Hyundai filed suit in the Superior Court of San Diego County, California against the three dealerships, Harrell, Williams, and Mark Lazarus (the chief financial officer of JT&T and Trailer Source), alleging that Hyundai had delivered more than $44 million in trailers to Southern Trailer but had received only $26 million in payment. Hyundai alleged that Southern Trailer had fraudulently conveyed trailers, which otherwise could have been used to settle its debt to Hyundai, to the other dealerships. Hyundai also asserted various other claims, including breach of contract.

In August 2002, Hyundai settled with all of the defendants in the California action. Southern Trailer and Trailer Source agreed to pay approximately $21 million to Hyundai in installments, and Hyundai voluntarily dismissed the suit with prejudice. The settlement agreement gave Hyundai a security interest in Trailer Source's accounts, equipment, and inventory. The agreement stated that the parties "desire[d] to settle, compromise, and forever resolve . . . the [California action], all claims they have asserted or could assert against each other in the [California action], and all other claims, rights, and obligations between them with

---

[2] Unless otherwise noted, factual allegations and procedural history are drawn from the parties' submissions and this court's previous memoranda regarding the defendants' Motion to Dismiss and Motion for Determination (Docket Nos. 111, 119).

respect thereto." (Docket No. 109, Ex. 3 § 2.7.) Hyundai agreed to release the California defendants from all claims, known or unknown, "arising out of any acts or omissions occurring prior to the execution of this Settlement Agreement." (*Id.* § 12.1.)

In October 2003, Trailer Source defaulted on the settlement agreement with $16.1 million still due. On June 30, 2004, Hyundai filed the instant suit against JT&T, Harrell, Williams, Lazarus, and Jeffrey G. Davis. Hyundai alleged that the defendants had fraudulently transferred Trailer Source's assets to avoid paying the company's creditors, asserting claims for fraudulent transfer and other torts. (Docket No. 1 ¶¶ 24-60.) On September 23, 2004, Hyundai amended the complaint to add claims for rescission and reformation of the California settlement agreement. (Docket No. 17 ¶¶ 61-66.) The defendants filed a counterclaim, asserting that Hyundai had breached the settlement agreement by filing suit. (Docket No. 9.)

On January 6, 2005, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source. Proceedings in this court were stayed, and the dispute moved to bankruptcy court under the caption *In re Trailer Source, Inc.*, No. 3:05-bk-00148 (Bankr. M.D. Tenn.). Hyundai contacted the trustee to request that he investigate the fraudulent transfer claims, but the trustee decided against it, citing a lack of funds to pay the investigation and litigation costs.

Hyundai then moved for a grant of derivative standing for it to pursue the fraudulent transfer claims on behalf of the bankruptcy estate, which the bankruptcy court denied. The bankruptcy court also approved a $50,000 settlement with JT&T, negotiated by the trustee, of all potential fraudulent transfer claims. Hyundai appealed, and this court reversed the bankruptcy court, granting derivative standing to Hyundai and denying approval of the trustee's settlement.

3

*Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, No. 3:06-0573, 2007 U.S. Dist. LEXIS 23816 (M.D. Tenn. Mar. 30, 2007). The Sixth Circuit affirmed the grant of derivative standing. *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 246 (6th Cir. 2009).

On July 13, 2009, Hyundai filed its Second Amended Complaint (Docket No. 85), which added certain allegations and substituted itself, in a derivative capacity for the Trailer Source bankruptcy estate, as plaintiff. The complaint alleges that the defendants structured a "triangular relationship" among the three dealerships: Southern Trailer acquired new trailers from Hyundai on credit; Trailer Source sold the new trailers to third parties, receiving cash and used trade-in trailers from the purchasers; and Trailer Source then transferred the used trade-in trailers to JT&T, which was in the business of leasing used trailers. (*Id.* ¶ 11.) Hyundai alleges that, between 2000 and 2003, Trailer Source defrauded its creditors by transferring millions of dollars worth of cash and used trailers to the defendants and their companies. (*Id.* ¶¶ 13-18.) In ruling on the defendants' Motion to Dismiss, the court dismissed all claims except for three sets of fraudulent transfer avoidance and recovery claims under Bankruptcy Code §§ 544 and 550. (Docket No. 112.) In their answer to the Second Amended Complaint, the defendants reasserted their counterclaim. (Docket No. 115.)

By the time Hyundai filed the Second Amended Complaint, Davis, who was a shareholder in Trailer Source, had filed for personal bankruptcy. As a result of a settlement in that bankruptcy case, Davis assigned Hyundai his stock in Trailer Source. Davis was not named as a defendant in the Second Amended Complaint.

4

In opposing Hyundai's efforts to gain derivative standing, the defendants repeatedly argued that res judicata bars Hyundai from satisfying its bankruptcy claim from any proceeds of the derivative avoidance action. The defendants based this argument on an Eighth Circuit case, *Williams v. Marlar (In re Marlar)*, 267 F.3d 749 (8th Cir. 2001). This court directed the defendants to file a motion regarding the *Marlar* issue, and on October 9, 2009, they filed a Motion for Determination that Hyundai Translead, Inc. is Barred from Participating in Estate Recovery Arising Out of this Action and to Limit Avoidance Damages. (Docket No. 108.)

As the title of that motion suggests, the defendants sought a ruling that (1) *Marlar* bars Hyundai from receiving any money recovered in this action, and (2) the damages in this action are thus limited to the value of the claims of non-Hyundai creditors. Although the sum of the claims filed against the Trailer Source bankruptcy estate is nearly $19.7 million, Hyundai's secured claim is approximately $19.45 million, and defendant JT&T's unsecured claim is approximately $46,000. (Docket No. 109 at 24; Docket No. 105, Ex. 2.) Excluding Hyundai and JT&T, creditors have made approximately $178,000 in claims.[3] (Docket No. 109 at 24.) The court denied the defendants' Motion for Determination on December 4, 2009. (Docket No. 120.)

## ANALYSIS

The defendants have filed a Motion to Certify Order for Appeal pursuant to 28 U.S.C. § 1292(b), seeking certification of two issues raised in their previous Motion for Determination:

---

[3] These are the claims filed to date. No bar date has been set in the Trailer Source bankruptcy.

5

> (1) Whether, as a matter of law, a creditor who sues to recover alleged fraudulent conveyances in state court and subsequently dismisses those claims with prejudice and executes a broad release of the defendant may later share in the proceeds of a bankruptcy trustee's fraudulent conveyance suit against the same defendant brought pursuant to 11 U.S.C. § 544(b); and
>
> (2) Whether the recovery of any potential avoidance damages awarded in a trustee's fraudulent conveyance action brought pursuant to 11 U.S.C. 544(b) and 550 should, as a matter of law, be limited to the amount necessary to satisfy the allowed claims of unsecured and administrative creditors who are permitted to participate in the proceeds of the estate avoidance action.

(Docket No. 122 at 1-2.) In addition, the plaintiff has filed a Motion to Dismiss the defendants' counterclaim pursuant to Federal Rule of Civil Procedure 13.

## I. Motion to Certify Appeal

Under 28 U.S.C. § 1292(b), a district court has discretion to certify an appeal of an interlocutory order if "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *W. Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis (In re City of Memphis)*, 293 F.3d 345, 350 (6th Cir. 2002). Interlocutory appeals are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp.2d 825, 831 (S.D. Ohio 1998). Therefore, certification "is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d at 350.

### A. Controlling Question of Law

A question of law is controlling "if it could materially affect the outcome of the case," *In re City of Memphis*, 293 F.3d at 351, or if "reversal [of the order at issue] would substantially alter the course of the district court proceedings or relieve the parties of significant burdens." *Gaylord Entm't Co. v. Gilmore Entm't Group*, 187 F. Supp. 2d 926, 957 (M.D. Tenn. 2001). If the Sixth Circuit were to adopt the defendants' arguments, avoidance damages in this action would be limited to, at most, $224,000 (plus administrative expenses), none of which would be recoverable by Hyundai. (*See* Docket No. 109 at 24.) Hyundai, having little incentive to continue litigating, would likely settle or dismiss the case. That certainly constitutes a material effect on the outcome of the case, so the two issues raised by the defendants are controlling questions of law.[4]

### B. Substantial Ground for Difference of Opinion

Next, the court turns to whether there is substantial ground for a difference of opinion on the issues raised by the defendants. This exists when "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Gaylord*, 187 F. Supp. 2d at 956 (citation omitted).

The defendants rely on *Marlar* in arguing that Hyundai is barred from sharing in any

---

[4] The plaintiff points out that, when this court previously certified the derivative standing issue for appeal, the court held that "the appellees' *Marlar* argument is not a 'controlling issue of law.'" *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, No. 3:06-0573, 2007 U.S. Dist. LEXIS 31323, at *20 (M.D. Tenn. Apr. 27, 2007). But at that point, the court was operating under the assumption that the derivative suit would involve fraudulent transfers occurring *after* the settlement of the California action. *Id.* at *16. Such transfers would be unaffected by any application of *Marlar*. Currently, however, the Second Amended Complaint only contains specific allegations regarding transactions that predate the settlement.

7

eventual recovery. That case created what this court has called the "*Marlar* rule": that a creditor cannot satisfy its bankruptcy claim from the proceeds of a trustee's avoidance action if the creditor previously brought identical claims and lost. In their reply, the defendants frame the issue for appeal as "not whether this Court is bound to follow *Marlar*, but rather whether principles of res judicata preclude a creditor like Hyundai from using the bankruptcy process to achieve 'two bites at the apple.'" (Docket No. 127 at 2.) To be clear, however, the doctrine of res judicata does not directly apply here. Aside from *Marlar*, the defendants offer nothing to support their desired application of the "principles of res judicata." Practically speaking, then, the defendants' success depends on whether the *Marlar* rule extends to this case.

*Marlar* involved a woman who sued in Arkansas state court under the Arkansas Fraudulent Transfer Act to set aside her ex-husband's conveyance of certain land. 267 F.3d at 753. The Arkansas court "rejected" that suit on its merits, concluding (1) that there was no evidence that the husband had intended to defraud creditors and (2) that the wife's constructive fraud claim failed because she had actual notice of the transfer. *Id.* The wife still possessed a divorce judgment, though, and less than one month after losing in state court, she and two other creditors filed a petition for involuntary bankruptcy against the husband. *Id.* Relying on the Arkansas Fraudulent Transfer Act, the bankruptcy trustee filed an action under Bankruptcy Code § 544 to avoid the same land conveyance. *Id.* The bankruptcy court granted summary judgment in favor of the trustee. *Id.*

On appeal, the Eighth Circuit directed the bankruptcy court to prevent the wife from satisfying her bankruptcy claim from any assets recovered in the trustee's avoidance action. In

8

its brief discussion of the matter, the court noted that a "state court judgment determined that [the wife] may not use the Arkansas Fraudulent Transfer Act to enforce her divorce decree." *Id.* at 756. Because the wife was "seek[ing] to avoid the bar of the [state court] judgment," the court held that allowing her to benefit from the trustee's recovery "would be contrary both to principles of res judicata under Arkansas law, and to principles of comity reflected in the federal Rooker/Feldman doctrine."[5] *Id.* The Eighth Circuit was primarily concerned with enforcing the public policy behind res judicata: "that when one appears in court to present his case, is fully heard, *and the contested issue is decided against him*, he may not later renew the litigation in another court." *Id.* (quoting *Heiser v. Woodruff*, 327 U.S. 726, 732-33 (1946)) (emphasis added). This court found that *Marlar* was distinguishable because the state court in that case adjudicated the merits of the wife's claims, whereas Hyundai voluntarily dismissed its state court action and never experienced an adverse adjudication. As this court explained in its December 4, 2009 memorandum:

> The key question, then, is whether it is contrary to the policy considerations enunciated in *Marlar* to allow Hyundai to satisfy its bankruptcy claim from any eventual proceeds of this derivative action. The court finds that such recovery would not be contrary to those principles. Hyundai never had a "contested issue . . . decided against [it]." *Marlar*, 267 F.3d at 756 (citation omitted). The California court never "determined that [Hyundai] may not use" fraudulent transfer statutes to avoid the defendants' transfers. *Id.* Simply put, Hyundai was not a state-court loser in the sense that the *Marlar* creditor was. The defendants ignore the difference

---

[5] The Rooker/Feldman doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

9

> between a final judgment resulting from an adverse finding of fact or law – as in *Marlar* – and a final judgment resulting from a voluntary dismissal that follows a settlement. Although a voluntary dismissal might function as a judgment on the merits for res judicata purposes, the two are not the same for the purposes of determining the fundamental fairness of Hyundai's actions. Because Hyundai's efforts are not aimed at undermining any factual or legal findings of a state court, they do not implicate the policy considerations that drove the Eighth Circuit's decision. Accordingly, the court will not apply the *Marlar* rule.

(Docket No. 119 at 9.)

The court reiterates its previous decision that the language and logic of *Marlar* mandate a distinction between (1) a substantive loss on the merits of a claim and (2) a voluntary dismissal pursuant to a settlement. The *Marlar* court fashioned an equitable remedy to address the peculiar facts of that case, explaining that it was doing so because a state court had previously ruled on the substance of the relevant claims. Here, there is no similar state-court ruling; the defendants seek not merely to apply the *Marlar* rule, but to extend it. As the defendants recognize, this makes the issue one of first impression. (*See* Docket No. 122 at 11.)

Although issues of first impression are sometimes appropriate for interlocutory appeal, the defendants' arguments are not persuasive enough to warrant certification. The defendants' position is supported neither by the text of *Marlar* nor by any other relevant case law.[6]

---

[6] The defendants point out that, under California law, a voluntary dismissal with prejudice has the same preclusive effect as a judgment on the merits. *See Torrey v. Superior Court*, 265 Cal. Rptr. 217, 221 (Cal. Ct. App. 1989). But this is irrelevant. *Marlar* explicitly based its holding on the principle that when a "'contested issue is decided against [a litigant], he may not later renew the litigation.'" 267 F.3d at 756 (quoting *Heiser*, 327 U.S. at 733). On its face, this principle does not apply when a contested issue has not been decided against a creditor. *Marlar* did not purport to incorporate every facet of the doctrine of res judicata.

10

Significantly, no subsequent cases have applied *Marlar* to prevent a creditor from satisfying a bankruptcy claim.[7] "Simply because a court decides a novel issue or a question of first impression does not mean there is substantial ground for difference of opinion concerning the correctness of the ruling. Serious doubt as to how an issue should be decided must exist in order for there to be substantial ground for difference of opinion." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, No. 04-73400, 2009 U.S. Dist. LEXIS 96767, at *6-7 (E.D. Mich. Oct. 20, 2009). The defendants have not shown that such doubt exists here.

The defendants also seek to bar Hyundai from sharing in any surplus recovery that is ultimately returned to Trailer Source,[8] but *Marlar* does not speak to distributions to the debtor. Barring Hyundai from receiving distributions as a Trailer Source shareholder would be an even further, and more unwarranted, extension of *Marlar*.

In sum, the court finds that no substantial ground exists for disagreement with its previous decision. The *Marlar* rule does not bar Hyundai from sharing in the proceeds of this

---

[7] In *XL Sports, Ltd. v. Lawler*, 49 Fed. Appx. 13 (6th Cir. 2002), the Sixth Circuit described *Marlar* in a parenthetical *cf.* citation as "finding that a creditor who already sued under a state fraudulent transfer act could not benefit from a subsequent suit by a trustee under § 544(b), even though other creditors might." *Id.* at 23. This brief mention provides no support for the defendants' argument. *XL Sports* found that res judicata barred a claim by the plaintiff, a debtor in possession, because the plaintiff could have brought the claim in a previous suit against the defendant. *Id.* In that previous suit, the case went to trial and the jury "exonerated" the defendant of alleged fraud. *Id.*

[8] As a result of its previous settlement with Jeffrey Davis, Hyundai holds equity in Trailer Source, although it is unclear what percentage of the company it owns. In a Chapter 7 bankruptcy, property of the estate is distributed to the creditors, and finally, if any surplus remains, "to the debtor." 11 U.S.C. § 726(a)(6). Thus, Hyundai would benefit, as a shareholder of Trailer Source, from any surplus recovery exceeding the creditors' claims. (*See* Docket No. 116 at 12.)

11

action. This once again makes moot the issue of whether the court should limit recovery under 11 U.S.C. §§ 544 and 550.

### C. Advancing the Termination of the Litigation

For reasons already discussed, it is likely that a decision by the Sixth Circuit in the defendants' favor would effectively terminate this litigation. But this case has been pending since 2004, partly because this court previously certified another interlocutory appeal by the defendants. More than 21 months passed between that certification and the publication of the Sixth Circuit's decision. Absent another appeal, it is possible that this action will be resolved within the next 21 months, either through trial, pretrial adjudication, or settlement. Because this case has already suffered from piecemeal adjudication, the court is reluctant to add any further delays. *See Hammer v. Occupational Envtl. Med., Inc.*, No. 3:00-CV-314, 2005 U.S. Dist. LEXIS 26861, at *13-14 (E.D. Tenn. Oct. 28, 2005) ("The parties have already made significant expenditures. Thus, interlocutory appeal appears less appropriate than it might have been at an earlier stage of this case.").

Because there is no substantial ground for the defendants' disagreement with the denial of their Motion for Determination, and because an appeal would further extend this already protracted litigation, the court will deny the defendants' Motion to Certify.

## II. Motion to Dismiss Counterclaim

Separately, the plaintiff has moved to dismiss the defendants' counterclaim, which alleges that Hyundai breached the parties' 2002 settlement agreement by filing suit in this court. Hyundai argues that, because it is currently suing in a derivative capacity, Hyundai itself is not

12

an "opposing party" against which counterclaims may be asserted.

Federal Rule of Civil Procedure 13 permits, and sometimes requires, defendants to file counterclaims against an "opposing party." Fed. R. Civ. P. 13(a)(1), (b). The plaintiff cites a number of cases to illustrate that, "when a party sues in his representative capacity, he is not subject to counterclaims against him in his individual capacity." *Metcalf v. Golden (In re Adbox, Inc.)*, 488 F.3d 836, 840 (9th Cir. 2007) (dismissing counterclaim against bankruptcy trustee that could have been brought against the debtor prior to the bankruptcy filing); *see also Banco Nacional de Cuba v. Chase Manhattan Bank*, 505 F. Supp. 412, 436 (S.D.N.Y. 1980) (collecting cases).

But as the defendants correctly point out, none of those cases involve counterclaims against a party that was a plaintiff in an individual capacity when the counterclaim was filed. Here, the defendants' counterclaim was properly filed against Hyundai when Hyundai initially sued in an individual capacity.[9] Hyundai's later substitution of itself in a derivative capacity did not somehow destroy the defendants' counterclaim or make the counterclaim invalid. *Cf. In re Commercial Money Ctr., Inc.*, No. No. 1:02CV16000, 2007 U.S. Dist. LEXIS 31217, at *25 (N.D. Ohio Apr. 27, 2007) (holding that the substitution of a new plaintiff did not "waive or

---

[9] In fact, if the defendants had not brought the counterclaim when filing their initial answer, they might have lost their ability to bring it later. A counterclaim is compulsory if "the issues of law and fact raised by the claims [and counterclaims] are largely the same" and would involve "substantially the same evidence." *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991); *see also* Fed R. Civ. P. 13(a)(1). Courts outside the Sixth Circuit have found that, when a counterclaim asserts that a plaintiff's complaint breaches a previous settlement agreement, it is compulsory. *E.g., Crossroads Partners v. Utah Crossing, Ltd.*, No. 98-15673, 1999 U.S. App. LEXIS 22721, at *15-16 (9th Cir. Sept. 9, 1999); *Makenta v. Univ. of Pa.*, No. 98-3376, 2002 U.S. Dist. LEXIS 415, at *5-6 (E.D. Pa. Jan. 11, 2002).

13

withdraw" the previous plaintiff's counterclaims to the defendant's counterclaims). In fact, it is not unusual for a defendant's counterclaims to remain after the plaintiff's claims have been disposed of. *See, e.g.*, *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 502 (6th Cir. 2002) ("The only issue remaining for trial was that part of Defendants' PMPA counterclaim that survived summary judgment."); *Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 546 (6th Cir. 1994) ("[W]here there is no basis for federal jurisdiction over the plaintiff's claim, a federal court may proceed to adjudicate a counterclaim that has an independent jurisdictional basis.").

Hyundai points out that, "as currently postured, Hyundai, in its individual capacity[,] is precluded from asserting claims, such as replevin, conversion and other claims related to its collateral, against the [defendants]." (Docket No. 118, Ex. 1 at 6.) Thus, according to Hyundai, allowing the defendants to assert their counterclaim is "fundamentally unfair." (*Id.*) But this supposed unfairness does not provide a basis for the court to dismiss the counterclaim. In any event, the defendants argue that, if the counterclaim were dismissed, they would "most likely re-file the counterclaim as a separate complaint." (Docket No. 123 at 11.) Although Hyundai might have valid substantive defenses against the counterclaim, nothing suggests that the defendants would be unable to re-file it. Accordingly, the court will deny the plaintiff's Motion to Dismiss.

14

## CONCLUSION

For all of the reasons discussed above, the defendants' Motion to Certify Order for Appeal and the plaintiff's Motion to Dismiss Counterclaim will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

15